## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BARBARA M.,

      Plaintiff,

    v.

ANDREW MARSHALL SAUL,
 COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 19 CV 1527

Magistrate Judge McShain

### MEMORANDUM OPINION AND ORDER

Plaintiff Barbara M. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. Among other errors, the plaintiff argues that the Administrative Law Judge (ALJ) failed to properly account for the episodic nature of plaintiff's mental illness, and the resulting symptoms and limitations, and improperly discounted the opinions of her treating physicians. This Court agrees with plaintiff and finds that, due to several errors made by the ALJ, substantial evidence does not support the decision to deny benefits. For the following reasons, the Court grants plaintiff's motion for summary judgment [10],[1] reverses the SSA's decision, and remands this case for further proceedings.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. However, citations to the administrative record [8-1] refer to the page number in the bottom right corner of each page.

## Procedural Background

Plaintiff applied for Disability Insurance Benefits in October 2015, alleging a disability onset date of August 27, 2015. [8-1] 17, 162. The claim was denied initially and on reconsideration. [*Id.*] 95, 98-100, 101. Plaintiff requested a hearing, which was held by an ALJ on September 18, 2017. [*Id.*] 151-156. In a decision dated February 14, 2018, the ALJ found that plaintiff was not disabled. [*Id.*] 14-33. The Appeals Council denied review on December 27, 2018 [*id.*] 1-8, making the ALJ's decision the final agency decision. This Court has jurisdiction to review the SSA's decision under 42 U.S.C. § 405(g).

## Summary of Plaintiff's Medical Evidence

Plaintiff was hospitalized twice – in 2013 and 2014 – for suicidal ideation. [8-1] 292. On February 2, 2012, psychiatrist Dr. Joanna Poniatowicz diagnosed plaintiff with major depressive disorder and generalized anxiety disorder. [*Id.*] 296. From February 2012 through September 2015, plaintiff received treatment from Dr. Poniatowicz, who prescribed to plaintiff several medications including Wellbutrin and Zoloft. [*Id.*] 295-305. The records reflect fluctuation in plaintiff's symptoms. [*Id.*]. Shortly after the onset date, on September 1, 2015, plaintiff's primary care physician Dr. Benedict Ciszek diagnosed plaintiff with depression. [*Id.*] 315-316.

From September 2015 through April 2016, plaintiff attended 19 therapy sessions with psychologist Mary Mika. [8-1] 442. At an intake session on September 8, 2015, Dr. Mika noted increased depression, with significant symptoms over the past two weeks. [*Id.*] 291-294. She diagnosed plaintiff with major depressive disorder,

recurrent and severe. [*Id.*] 452. Dr. Mika's intake notes indicate that plaintiff had worked for 12 years before her recent position change at her job as a teacher's aide with elementary school children (discussed below). [*Id.*] 291-294. About a week or two into her new position, her depression worsened. [*Id.*]. She found her new position – working with children with disabilities – too stressful. [*Id.*]. On October 22, 2015, Dr. Mika wrote a letter in which she noted plaintiff endured symptoms of depressed mood, hopelessness, feeling worthless, guilt, poor sleep at night, excessive sleep during the day, loss of appetite, withdrawal from others, fear of leaving her house, lack of interest, poor memory, inability to concentrate, difficulties with self-care, loneliness, fatigue, and passing suicidal thoughts. [*Id.*] 324-325. She had no suicidal intent or plan. [*Id.*]. Dr. Mika opined that, as a result of plaintiff's current symptoms, history of suicidality, and pending work-related stressors leading to panic attacks, plaintiff was unable to work. [*Id.*]. On December 1, 2015, Dr. Mika noted that plaintiff's mood had declined significantly and that she had been feeling suicidal. [*Id.*] 448. Dr. Mika called plaintiff that evening, and plaintiff reported that she had been with her husband during the day and felt better. [*Id.*]. Dr. Mika's records reflect several reports of improvement at therapy sessions from December 2015 through February 2016. [*Id.*] 442-452. On April 19, 2016, plaintiff's mood was again depressed. [*Id.*] 442. At that time, Dr. Mika evaluated plaintiff for bipolar disorder because of her consistent mood shifts. [*Id.*]. After that appointment, plaintiff discontinued therapy for lack of insurance coverage. [*Id.*]. Dr. Mika's closure note indicated that therapy helped reduce depressive and anxious symptoms, and that plaintiff needed

to practice challenging irrational thoughts and using positive strategies when she feels upset. [*Id.*].

In June 2016, plaintiff began receiving depression treatment from psychiatrist Dr. Bernadette Stevenson. [8-1] 349-400, 427-434. Over the course of treatment, Dr. Stevenson continually adjusted plaintiff's psychotropic medications. [*Id.*]. On October 28, 2016, after treating plaintiff every two to four weeks for four months, Dr. Stevenson completed a Mental Residual Functional Capacity Statement for plaintiff that included the following information, opinions, and findings (among others). Dr. Stevenson diagnosed plaintiff with bipolar disorder II, depression, and anxiety disorder, and noted her illnesses were chronic with a guarded prognosis. [*Id.*] 431. Dr. Stevenson documented that plaintiff was taking several psychotropic medications. [*Id.*] 432. Dr. Stevenson assessed plaintiff with a Global Assessment of Functioning (GAF) score of 45, and she opined that plaintiff would be unable to obtain or sustain full time competitive work. [*Id.*] 431, 433. Dr. Stevenson endorsed significant limitations in plaintiff's ability to perform activities within a schedule, sustain an ordinary routine without special supervision, complete a normal workday without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. [*Id.*] 432. In response to the question addressing any and all physical and non-exertional limitations, Dr. Stevenson wrote, "chronic relapses of depression affecting her ability to function; *i.e.*, can't get [out of bed] for several days due to her fatigue." [*Id.*] 433. In response to the question, "Does your patient's behavioral condition exacerbate your

patient's experience of pain or other physical symptoms, and if so, please describe," Dr. Stevenson wrote, "Yes; fatigue; low energy." [*Id.*]. Dr. Stevenson further endorsed significant limitations in plaintiff's ability to respond appropriately to work place changes, and moderate limitations in her ability to interact with the general public or co-workers. [*Id.*] 432-433. She opined that plaintiff would likely be off task for more than 30 percent of a workday, that she would be about 40 percent as efficient as an average worker, and that she would be absent more than six days per month as a result of her mental impairments. [*Id.*] 433.At the conclusion of the Statement, Dr. Stevenson wrote, plaintiff "has been in treatment with me since June 2016 and continues to struggle with severe, recurrent bipolar depressive episodes." [*Id.*] 434.

On July 27, 2017, Plaintiff presented for an annual physical with Naveen Abraham, M.D., a primary care physician. [*Id.*] 412. Dr. Abraham indicated that plaintiff's depression appeared to be stable. [*Id.*] 416. She noted that plaintiff had a depressed mood and affect, and Dr. Abraham diagnosed plaintiff with fatigue and bipolar/depression. [*Id.*] 415.

After more than a year of treating plaintiff every two to four weeks (and the notes reflect at times marked improvement in plaintiff's symptoms), Dr. Stevenson completed a second Mental Residual Functional Capacity Statement on August 11, 2017. [8-1] 427-430. By this time, Dr. Stevenson endorsed significant limitations in several more areas of function, including plaintiff's ability to remember procedures, and understand, remember, and carry out short and simple instructions. [*Id.*] 428. She endorsed significant limitations in plaintiff's ability to maintain attention and

concentration for extended periods, as well as her ability to complete a normal work day without interruption from psychological symptoms, and to perform at a consistent pace without an unreasonable number of rest periods. [*Id.*]. She endorsed significant limitations in all areas of social interaction, including plaintiff's ability to respond appropriately to supervisors, and significant limitations in her ability to set realistic goals and make independent plans. [*Id.*] 428-429. Dr. Stevenson opined that plaintiff would be further limited by recurrent episodes of major depression, difficulty getting out of bed, anxiety, paranoia, low energy, indecisiveness, and memory/ concentration issues. [*Id.*] 429. She again opined that plaintiff would likely be off task more than 30 percent of a work day, and absent more than six days per month. [*Id.*]. Dr. Stevenson assigned a GAF score of 35, and she opined that plaintiff would be unable to sustain full time work. [*Id.*] 430. Dr. Stevenson noted at the conclusion of the Statement under "additional comments and remarks" that plaintiff had failed multiple medication trials, and that they were considering electroconvulsive therapy (also known as "ECT" treatments). [*Id.*].

### Summary of Function Reports and Hearing Testimony

Both plaintiff (with the assistance of a Polish interpreter) and her husband completed function reports. [8-1] 223-242. Plaintiff's report (dated February 18, 2017) details that she experienced fluctuations in her symptoms, and at times was unable to get out of bed or care for herself or her family for weeks at a time. [*Id.*] 223-233. For example, "When depression hits – I do not get out of bed at all – sometimes for weeks." [*Id.*] 226. When her symptoms were manageable, plaintiff detailed that she

was able to get out of bed and care for herself and her family. [*Id.*] 223-233. However, even when she was not experiencing a major depressive episode, plaintiff detailed that she rarely interacted socially with non-immediate family members and rarely left her residence, except for doctors' and therapists' appointments. [*Id.*]. Plaintiff's husband's report is consistent with plaintiff's report. [*Id.*] 235-42.

With the assistance of a Polish interpreter, on September 18, 2017, plaintiff testified at the administrative hearing that she became unable to work as a teacher's assistant with special education children on August 27, 2015, as a result of limitations arising out of her multiple mental impairments. [8-1] 34, 36-37, 42-43. Plaintiff testified that her mental impairments caused her to lose balance, and caused memory problems. [*Id.*] 44. Plaintiff testified that prior to getting sick, she had energy but that was not currently the case. [*Id.*] 45. Plaintiff also noted that her current medications made her shake. [*Id.*].

Plaintiff testified that when she began seeing Dr. Stevenson, her body changed and her medications needed to be adjusted. [8-1] 45. At one time, plaintiff acknowledged that medication helped her bipolar symptoms; however, at the time of the hearing, plaintiff testified that the medication was not working and, at times due to the medication, she experienced dizziness and loss of balance. [*Id.*] 44-46.

Plaintiff testified that her symptoms fluctuated, with good days for approximately one week per month and bad days for approximately three weeks per month. [8-1] 49. She testified that when she felt good, she was active and able to engage in household chores and with her family, but when she was feeling bad, she

often could not get out of bed, did nothing outside of the home, and her husband and son cooked and cleaned the house. [*Id.*] 49-54.

## Legal Standard

I review the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is a standard that "requires more than a mere scintilla of proof and instead such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018) (internal quotation marks omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The SSA must consider whether (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity (RFC) to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020).

**Discussion**

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity after the alleged onset date. [8-1] 19. At step two, the ALJ found that plaintiff had three severe impairments: major depressive disorder, bipolar disorder, and generalized anxiety disorder. [*Id.*]. At step three, the ALJ found that plaintiff's mental impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment, including Listings 12.04 and 12.06 for mental disorders. [*Id.*]. 20. At step four, the ALJ found that plaintiff has the RFC to perform "a full range of work at all exertional levels" subject to certain restrictions. [*Id.*] 21-26. Specifically, the ALJ found the following non-exertional limitations: she can understand, remember, and carry out simple, routine, and repetitive tasks; she is unable to meet hourly production goals, but is able to meet end of day goals; she can use judgment related to simple work related decisions; and she can have occasional interaction with supervisors and coworkers, but only brief and superficial interaction with the general public. [*Id.*] 21. The ALJ also found that plaintiff was not capable of performing her past relevant work as a preschool teacher. [*Id.*] 26. Finally, at step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that plaintiff can perform. [*Id.*] 26-27. At the hearing, a vocational expert testified that plaintiff's past work as a tutor and a preschool teacher are classified as light and skilled. [*Id.*] 58. He testified that an individual such as plaintiff with the above RFC assessment would be unable to perform her past work, but plaintiff would be able to perform other (unskilled) available work. [*Id.*] 59. The vocational expert testified that plaintiff could be off task between five and ten percent

of the work day and absent no more than one day per month, in order to maintain employment. [*Id.*] 60. Accordingly, the ALJ found that plaintiff was not disabled.

Plaintiff argues that the ALJ failed to properly account for the episodic nature of plaintiff's mental illness and the resulting symptoms and limitations and improperly discounted the opinions of her treating physicians. [11] 8-11.

In support, plaintiff observes that, at step three, the ALJ found that plaintiff's mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06. [8-1] 20-21. To reach this conclusion, plaintiff continues, the ALJ dismissed Dr. Stevenson's opinions regarding plaintiff's limitations as inconsistent because Stevenson documented increased severity in plaintiff's limitations in her 2017 assessment as compared to her 2016 assessment. [*Id.*]. As an example, plaintiff points to the ALJ's analysis of the paragraph B criteria of interaction with others, where the ALJ found only a moderate limitation despite plaintiff, plaintiff's husband, and Dr. Stevenson's citing essentially no social interactions: "Again, although Dr. Stevenson's choose [*sic.*] the most extreme options in social interaction in August 2017, her assessment was relatively mild in October 2016. Also, the state agency psychological consultants found that the claimant had moderate limitations in this area." [*Id.*] 20. Later in the ALJ's step three analysis, when addressing the criteria of understanding, remembering, or applying information, the ALJ found that plaintiff had only a "mild limitation" based on Dr. Mika's records and dismissed Dr. Stevenson's opinions on this point as inconsistent: "Her psychiatrist, Dr. Stevenson, completed two medical source statements, which were generally inconsistent and are given little weight for

10

the reasons discussed later in this decision. Although she chose the most extreme option for areas of memory and understanding in August 2017, in October 2016 she indicated that understanding and memory did not preclude performance of any aspect of work. However, she did indicate on both statements that the claimant could carry out short and simply instructions. The undersigned finds that the claimant's limitations in this area are no more than mild." [*Id.*].

Plaintiff then argues that the ALJ's improper weighing of her treating doctors' opinions fatally undermined her step four analysis. There, while the ALJ conceded that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [8-1] 22-23. Because of the supposed lack of medical evidence supporting plaintiff's claim, the ALJ assessed the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations: "understand, remember, and carryout simple, routine and repetitive tasks; not able to meet hourly productions goals, but able to meet end of day goals; use judgment related to simple work related decisions; and occasional interaction with supervisors and coworkers, but only brief and superficial interaction with the general public." [*Id.*] 21. But plaintiff contends that the ALJ wrongly minimized the opinions of plaintiff's treating physicians:

> As for the opinion evidence, the state agency medical consultants found no physical impairments (Ex. 1A/5; 3A/6). Great weight is given to that opinion. As for the state agency psychological consultants, the residual functional capacity herein is somewhat more restrictive, but largely

consistent with their opinion. Additional evidence received after their review revealed that the claimant's mental impairments were slightly greater than the state agency psychological consultants estimated. Therefore, their opinion is given partial weight. The state agency medical and psychological consultants are trained in evaluating Social Security disability claims, reviewed the evidence that was made available to them, and made reasonable, well-supported conclusions based on that evidence. Their assessments are supported by detailed explanation, rationale, and analysis of the medical evidence of record.

On October 22, 2015, [Dr. Mika] opined that the claimant was unable to efficiently perform the duties and responsibilities of her job at that time (Ex. 7F). However, Dr. Mika only began treating the claimant on September 8, 2015 (*Id.*). Furthermore, her opinion is not consistent with her own treatment records (Ex. 15F) and the longitudinal record, which indicate that the claimant was improving. Therefore, Dr. Mika's opinion is given little weight.

The claimant's psychiatrist, Dr. Stevenson, completed two medical source statements, which were generally inconsistent with each other, Dr. Stevenson's own treating notes, and the longitudinal record (Ex. 12F/August 2017 at 1-4, October 2016 at 5-8). The claimant's Global Assessment of Functioning ("GAF") score, according to Dr. Stevenson, decreased from 45 to 35 from October 2016 to August 2017 (*Id.*). Overall, the later opinion in August 2017, was far more restrictive than the earlier opinion from October 2016. However, the longitudinal record shows that the claimant improved over this period. Both opinions did state that the claimant would be off task more than 30 percent and absent more than 6 days per month (*Id.*). However, that extreme opinion is not consistent with the longitudinal record. Further, her opinions are not supported by her own treatment notes, which do not provide any detailed mental status exams (*see* Ex. 10F). Therefore, the undersigned gives her opinion little weight.

[8-1] 25.

This Court agrees with plaintiff and finds that, due to several errors made by the ALJ, substantial evidence does not support the decision to deny benefits.

First, no substantial evidence cited by the ALJ supports her decision to dismiss the medical evidence in the record regarding plaintiff's limitations as inconsistent.

12

On the contrary, the treating physicians' opinions and the medical records are "not so much 'contradictory' as reflective of the nature of bipolar disorder [and plaintiff's other diagnoses] causing a person to experience sequential highs and lows." *Hill v. Astrue*, 1:09-cv-552, 2010 WL 3883236, at *8 (S.D. Ind. Sept. 27, 2010) (citing *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008)). "It is well-recognized that bipolar disorder, like other disorders, is not static and changes with time and as medications are adjusted in accordance with a patient's symptoms." *Hill*, 2010 WL 3883236, at *8.

The ALJ in this case failed to appreciate the undisputed episodic nature of plaintiff's disorders – major depressive disorder, bipolar disorder, and generalized anxiety disorder – and the symptoms and limitations she experienced. Consequently, the ALJ erroneously disregarded what were actual consistencies in the administrative record – namely that the opinions of Drs. Stevenson and Mika, the records of all of plaintiff's treating physicians, plaintiff's testimony, and the function reports completed by plaintiff and her husband are consistent with each other and the nature of plaintiff's disorders, which manifest symptoms that are episodic and unpredictable in nature.

Second, the ALJ erred in her discounting of plaintiff's treating physicians' opinions. The "treating physician" rule "directs the administrative law judge to give controlling weight to the medical opinion of a treating physician if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence.'" *Hofslien v. Barnhart,* 439 F.3d 375, 376 (7th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(2), which codifies the rule)). An

ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Martinez v. Astrue,* 630 F.3d 693, 698 (7th Cir. 2011); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010). If contradictory evidence is introduced, "the treating physician's evidence is just one more piece of evidence for the administrative law judge to weigh . . . . The [treating-physician] rule goes on to list various factors that the administrative law judge should consider, such as how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, and so forth. The checklist is designed to help the administrative law judge decide how much weight to give the treating physician's evidence. When he has decided how much actual weight to give it, there seems no room for him to attach a presumptive weight to it." *Hofslien*, 439 F.3d at 377.

In this case, this standard has not been met as the ALJ failed to identify the substantial evidence that contradicted the opinions of plaintiff's treating psychologist and psychiatrist.

First, the ALJ cited to the "longitudinal record" but failed to identify what part of that record undermined the treating doctors' opinions. Moreover, even though improvements and setbacks in plaintiff's symptoms and limitations – and resulting "inconsistencies" in the medical records – are to be expected given the episodic nature of plaintiff's disorders, the ALJ did not address this issue at all. *See, e.g., Kangail v. Barnhart,* 454 F.3d 627, 629 (7th Cir.2006) (stating that it was not contradictory that medical witnesses said the plaintiff's mental illness was severe yet observed that she was behaving pretty normally during her office visits). Indeed, the longitudinal record

14

reflects stable and manageable symptoms at one end of the spectrum, and suicidal ideation and several failed medication trials (leading Dr. Stevenson to note that plaintiff was considering the option of electroconvulsive therapy) at the other end of the spectrum. And the treatment notes of both Drs. Mika (whose notes also reflect her interactions with plaintiff's husband and plaintiff's primary care physician, Dr. Ciszek) and Stevenson are consistent with that record, as both doctors documented the fluctuation in plaintiff's symptoms. [8-1] 291-294, 324-325, 349-400, 427-434, 442-452. For that reason, it was error for the ALJ to "cherry pick" from the mixed records to support a denial of benefits. *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir.2010); *see Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir.2009) (same).

Second, the ALJ cited the state consultants. However, while the ALJ afforded "great weight" to the state medical consultants' opinions (*i.e.*, not psychological consultants) – who found plaintiff to have no physical impairments – the ALJ afforded only "partial weight" to the opinions of the state agency psychological consultants, as the ALJ's RFC was more restrictive that the psychological consultant's opinions.

Third, when assessing the opinions of plaintiff's psychological treaters, the ALJ faulted (1) Dr. Stevenson for the absence of mental status exams and her more extreme findings in her 2017 report (when compared to the 2016 report) and (2) Dr. Mika for apparently treating plaintiff too close in time to her onset date and forming an opinion too early in the course of her treatment of plaintiff. As to the absence of mental status exams, the ALJ provided no explanation as to how that factored into her discounting of Dr. Stevenson's opinions – plaintiff's treating psychiatrist for a

period of years. Moreover, the state agency psychological consultants did not examine plaintiff, and thus could not have performed a mental status exam of the plaintiff. *See Carolyn S. v. Saul*, 19-cv-385, 2020 WL 231085, at *7 (N.D. Ill. Jan. 15, 2020) (remanding for, among other reasons, ALJ's failure to properly weigh treating psychiatrist's opinions where ALJ stated, without explanation, the treating psychiatrist's failure to conduct a mental status exam was a basis to afford "little" weight to the treater's opinions). As to the ALJ's other stated reasons for giving little weight to the opinions of Drs. Stevenson and Mika, the ALJ either failed to explain her reasoning or she failed to account for the episodic nature of plaintiff's disorders. Finally, while Dr. Mika formed an opinion early on in her course of treating plaintiff, nothing in the administrative record reflects that her opinion changed. *See* [8-1] 291-294, 324-325, 442-452. Dr. Mika's diagnoses remained unchanged during the course of her treatment of plaintiff [*id.*], and Dr. Mika's treatment notes reflect the episodic nature of plaintiff's disorders and that plaintiff's medications were not always effective [*id.*]. *See* [*id.*] 442 (treatment note as of April 19, 2016, the last treatment note, Dr. Mika wrote that plaintiff and her husband attended a sixty-minute therapy session, plaintiff stated she was depressed again and husband reported frustration with the cycle of plaintiff depression and that the medications were not working).

Thus, in total, other than the state agency psychological consultants' opinions – again, to which the ALJ afforded only partial weight because she herself disagreed with them – the ALJ failed to cite any other evidence that supported her decision to give "little weight" to the opinions of Drs. Stevens and Mika. *See Elmore v. Astrue*,

08-2221, 2009 WL 4931681, at *3 (C.D. Ill. Dec. 15, 2009) (remanding for ALJ's failure to refer to any evidence in the record that supported ALJ's cited reasons for failing to give controlling weight to treating psychiatrist's opinion). Even if this Court assumes that there is substantial contradictory evidence in the record as to the psychological treating physicians' opinions, Drs. Stevenson and Mika were both specialists in psychiatric disorders and they examined and treated plaintiff regularly and over a period of years. The checklist required the ALJ to give great weight to their evidence unless it was seriously flawed, and the only flaw cited by the ALJ is the absence of mental status exams in Dr. Stevenson's record, without elaboration or explanation. *See Carolyn S.*, 2020 WL 231085, at *7 (rejecting this same purported flaw as a basis for ALJ to discount treating psychiatrist's opinoin). Accordingly, this Court fails to see any flaws in the opinions of Drs. Stevenson and Mika, and the ALJ failed to cite any. Instead, the ALJ simply reached a contrary view that, for reasons already discussed, failed to account for and appreciate the very nature of plaintiff's disorders. *See Scott v. Astrue*, 647 F.3d 734, 738-39 (7th Cir. 2011) (remanding based on ALJ's unsupported rejection of treating psychiatrist's diagnosis of bipolar disorder (whose records reflected plaintiff's good days and manic days) in favor of state agency consultant); *Boiles v. Barnhart,* 395 F.3d 421, 426–27 (7th Cir. 2005) (remanding where the ALJ's rejection of the treating physician's opinion "did not explain how other evidence in the record contradicted [the treating source]'s opinion"); *Barnett v. Barnhart,* 381 F.3d 664, 669 (7th Cir. 2004) (remanding where the ALJ explained his

reasons for rejecting the treating source's opinion, but that explanation ignored or misconstrued significant parts of the medical record).

The Commissioner's brief puts the state psychological consultants' opinions of Drs. Henson and Cochran on par with those of plaintiff's treating physicians [16] 1, and repeats (and credits) the ALJ's reasoning in affording little weight to the opinions of Drs. Stevenson and Mika [*Id.*] 7-11. The Commissioner acknowledges the treating physician rule, and correctly notes that it is not absolute. [*Id.*] 11. However, as discussed above, the ALJ's reasoning is flawed with respect to the little weight she afforded treating physicians Drs. Stevenson and Mika, and the Commissioner's brief also fails to account for the episodic nature of plaintiff's disorders. Both of these errors – the failure to appreciate the episodic nature of plaintiff's disorders and give proper weight to the opinions of plaintiff's treating physicians – led to the ALJ ignoring evidence in the record that plaintiff's symptoms incapacitated her for weeks at a time, which would prevent plaintiff from maintaining full-time employment – a conclusion reached by Drs. Stevenson and Mika.

The Commissioner acknowledges that the plaintiff's inability to regularly show up for work is a limitation missing from the RFC, [16] 1-2, but the Commissioner primarily utilizes the doctors' opinions on this point as support for the notion that the treatment notes do not support the purportedly extreme conclusion regarding plaintiff's inability to work, [*id.*] 7-11. However, this Court's review of Drs. Mika and Stevenson's treatment notes and reports do not show an upward and consistent trend of improvement and thus do not support one of the ALJ's cited rationales for rejecting

their opinions. While ability to work is considered a "reserved issue" that is given no special weight in determining a claimant's functional capacity, a medical expert (such as Drs. Stevenson and Mika) "'may report or testify that the patient is unable to perform . . . jobs' when it is apparent 'that the patient has a physical or mental condition that prevents him from performing on a full-time basis any jobs having particular requirements.'" *Hill*, 2010 WL 3883236, at *8 (quoting *Bauer*, 532 F.3d at 609). In such an instance, while the treating physician's "'judgment is not conclusive,' when it is 'not offset by evidence concerning availability of jobs to someone having the plaintiff's disorder plus her other characteristics,' it should be given some weight." *Hill*, 2010 WL 3883236, at *8 (quoting *Bauer*, 532 F.3d at 609). Here, no offsetting evidence was presented at the hearing concerning the availability of jobs to someone having the plaintiff's disorders plus her other characteristics, and the ALJ erred by completely discounting Drs. Stevenson's and Mika's opinions.

Ultimately, this case is strikingly similar to *Bauer*, in which the Seventh Circuit remanded the case based on the ALJ's dismissal of the treating physicians' opinions and the plaintiff's testimony (who was diagnosed with bi-polar disorder) where the ALJ discounted those opinions and testimony as inconsistent and, thus, not credible:

> For example, the judge noted that the plaintiff dresses appropriately, shops for food, prepares meals and performs other household chores, is an "active participator [*sic* ] in group therapy," is "independent in her personal hygiene," and takes care of her 13–year–old son. This is just to say that the plaintiff is not a raving maniac who needs to be locked up. She is heavily medicated, and this enables her to cope with the challenges of daily living, and would doubtless enable her to work on some days. But the administrative law judge disregarded

uncontradicted evidence that the plaintiff's son cooks most meals, washes the dishes, does the laundry, and helps with the grocery shopping. And Caspary and Chucka, having treated the plaintiff continuously for three years, have concluded that she cannot hold down a full-time job.

What seems to have made the biggest impression on the administrative law judge, but suggests a lack of understanding of bipolar disorder, was that Dr. Caspary's treatment notes, which back up the report in which she concludes that the plaintiff cannot work full time, contain a number of hopeful remarks. They are either remarks the plaintiff made to Caspary during office visits or Caspary's independent observations—the plaintiff's memory was "ok," her sleep fair, she was doing "fairly well," her "reported level of function was found to have improved," she had "a brighter affect and increased energy," she "was doing quite well." On the basis of such remarks the administrative law judge concluded: "little weight is given the assessment of Dr. Caspary."

A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job. *E.g., Watson v. Barnhart*, 288 F.3d 212, 217–18 (5th Cir. 2002); *Washington v. Shalala*, 37 F.3d 1437, 1442–43 (10th Cir. 1994). That is likely to be the situation of a person who has bipolar disorder that responds erratically to treatment. Ronald C. Kessler et al., "The Prevalence and Effects of Mood Disorders on Work Performance in a Nationally Representative Sample of U.S. Workers," 163 *Am. J. Psychiatry* 1561–68 (2006). That is another point that the administrative law judge overlooked.

532 F.3d at 608-609.

The same flaws that warranted a remand to the SSA in *Bauer* exist here. For that reason, as well as the other reasons discussed above, the case must be remanded.[2]

---

[2] Because these two errors discussed herein are dispositive, the Court need not address the other issues raised by plaintiff.

## Conclusion

Plaintiff's motion for summary judgment [10] is granted. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: December 14, 2020**

21